# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

NOVEMBER TERM, 1890.

53 189
e64e 495

CAMDEN FIRE INSURANCE ASSOCIATION, PLAINTIFF IN ERROR, v. DEBORAH JONES, DEFENDANT IN ERROR.

1. The assignee of a certificate of stock refused to accept the transfer of the certificate, unless the transfer was signed by the principal herself. *Held*, that the shares passed to the assignee, if the owner's name was signed by an agent duly authorized for that purpose, although the purchaser supposed the signature was that of the principal.

2. The principal said, to a person who was negotiating with A for the purchase of a tract of her land, that A was authorized to sell her land and that he transacted all her business. *Held*, that this furnished no ground for the assumption that A was authorized to dispose of her choses in action, or transfer her shares of stock.

In error.

For the plaintiff in error, *P. L. Voorhees.*

For the defendant in error, *S. H. Grey.*

189

The opinion of the court was delivered by

VAN SYCKEL, J.   This suit was brought by Deborah Jones against the Camden Fire Insurance Association, to recover the value of four hundred and fifty-four shares of the capital stock of said association.   The following state of facts was developed at the trial of the cause :

Certificates for these shares were held by Mrs. Jones in her own name—one certificate for four hundred and forty shares, the other for fourteen shares.

It appeared that one D. W. Belisle, who lived in the same house with Mrs. Jones, and was one of her family, and who had access to all her papers, on the 19th day of June, 1884, delivered the certificates for these shares of stock, with a transfer thereof purporting to be executed by Mrs. Jones, to one R. W. Birdsell, to whom they were afterwards transferred upon the books of the company.

The following is a copy of the transfer endorsed upon the certificate for four hundred and forty shares :

" For value received I hereby assign and set over unto R. W. Birdsell all my right, title and interest to four hundred and forty (440) shares of stock, mentioned in the within certificate, and I do hereby appoint and constitute Jonathan Burr my true and lawful attorney for me and in my name to transfer said shares of stock on the books of the company.

" Witness my hand and seal this nineteenth day of June, A. D. 1884.

" DEBORAH JONES.   [L. S.]

" Witness present,

   " D. W. BELISLE."

The transfer of the certificate for fourteen shares was in like form.

The defendant company insisted, on the trial below, that the signature of Mrs. Jones to the transfer was in her own handwriting, and, if they failed to satisfy the jury of that fact, then that said Belisle was the duly authorized agent of

Mrs. Jones, with full power to assign and sell the said shares, and that her signature was duly signed by said agent.

In support of this contention, the defendant produced a power of attorney, of which the following is a copy :

" Know all men by these presents, that I, Deborah Jones, of the city of Camden, county of Camden, and State of New Jersey, have made, constituted and appointed, and by these presents do make, constitute and appoint, David W. Belisle, of the city of Camden, county of Camden, and State of New Jersey, my true and lawful attorney for me and in my name, place and stead, and to my use to demand, sue for and receive of any person or persons all debts, dues and demands whatsoever which are due and owing, or of right belonging, unto me at this time, and to use all lawful means for the recovery thereof, and to compound and agree for the same, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof, as well as to sign my name in all business transactions.

" In witness whereof, I have hereunto set my hand and seal the thirtieth day of July, in the year of our Lord one thousand eight hundred and seventy-eight.

" D. Jon&ebreve;s.   [L. S.]

" Sealed and delivered in the presence of

" J. Harned Morris."

This evidence was supplemented by the following parol testimony :

That Belisle had acted for Mrs. Jones in the collection of her dividends on this stock prior to its transfer ; that he acted for her in the collection of her rents ; that he had made con-

tracts for her for the erection of houses on her lands; that he had sold real estate for her; and, in addition to this, the following testimony, by one Garren, was submitted to the jury:

"*Q.* How long prior to the date of that was it that you saw Mrs. Jones?

"*A.* I could not answer that; I will state the circumstances about the time, if you wish it.

"*Q.* What was it about the time?

"*A.* Well, Mr. Belisle came into my place; I wanted to buy that property, and wanted to buy the little brick, and I went into an agreement with Mr. Belisle, for Mrs. Jones, that I should have that property for $4,000, and he flunked on the agreement; then I wanted him to put it in black and white.

"*Q.* Did you go to see Mrs. Jones?

"*A.* I did.

"*Q.* And what did Mrs. Jones state?

"*A.* Mrs. Jones said that Mr. Belisle transacted all her business, and what he done she would stand by; it was all right; I told Mrs. Jones that Mr. Belisle had a power of attorney and he said he could do all her business, and she said it was all right, and on the strength of that I went on and transacted the business, and it is all right, because I have paid the money and got the property.

"*Q.* Have you got the deed that was given to you, Mr. Garren?

"*A.* Yes, sir; and she has acknowledged that deed in open court here the other day, and that I paid her the money."

It appeared on the trial that the defendant company had knowledge of the existence of the written power of attorney, but that it had refused to permit the transfer of Mrs. Jones' shares unless the endorsement of transfer was executed by herself.

After the parol evidence as to the agency of Belisle had been taken, the trial judge ruled that the only question was, whether the signatures on the backs of the certificates were written by Mrs. Jones herself, or written at her request and

with her approval for the purpose of effecting the transfer thereof to Birdsell. He therefore overruled all the parol testimony before stated tending to show an agency, by acts or declarations of the principal, extending over a period of time antedating this transfer.

It being an undisputed fact in the case that the defendant company did not act on the ground of a supposed agency, but on the belief that the signature was that of Mrs. Jones, it was not, therefore, misled by any act of the principal in holding Belisle out as her agent. Nevertheless, if Belisle was really authorized to sign Mrs. Jones' name, the transfer would be valid, although the company expected to get the signature of the principal.

The trial judge therefore erred in overruling the parol evidence of agency, if accepting it as true the jury could have been permitted to find under it lawful authority in Belisle to make the assignment on behalf of Mrs. Jones.

In my judgment, the fact that Belisle was authorized to collect dividends and rents, and to make contracts for the erection of houses, and for the sale of lands for Mrs. Jones, furnished no basis whatever for the inference that he had authority to sell and dispose of her shares of stock in the defendant company.

To justify such a conclusion, there must be evidence of authorization for that specific purpose, or there must be proof of a general agency to transact the principal's business and dispose of her property. Power to sell lands or to make contracts to build houses does not imply or carry with it authority to sell and dispose of goods and shares of stock and to execute a transfer in the name of the principal. There is no necessary relation between these acts, and nothing to indicate that the principal, in extending the agency to one, had the other in view.

Nor does the evidence of Garren show that the execution of the assignment in question was within the grant of power to the agent.

Garren had negotiated with Belisle for the purchase of a lot of land owned by Mrs. Jones. He went to see Mrs. Jones and asked her about the matter. She said that Belisle transacted all her business, and what he had done she would stand by.

Garren told Mrs. Jones that Belisle had a power of attorney, and that he said he could do all her business, and she said it was all right, and he then made the contract with the agent. This conversation was with reference to a specific matter, viz., the sale of a lot which Garren desired to purchase, and what Mrs. Jones said was with reference to that particular transaction.

As to that transaction, it undoubtedly made the act of the agent the act of the principal.

It does not appear that this conversation was communicated to the defendant company before the alleged transfer of the shares of Mrs. Jones, and even if it had been brought to the knowledge of the company, it would have been no basis for the assumption that she had constituted Belisle her lawful attorney to dispose of all her choses in action and to execute a transfer of them in her name. It would be highly dangerous to permit a power so ample to be drawn from a general statement of this character with relation to an entirely different affair. Aside from this, the written power of attorney was spoken of in the conversation of Mrs. Jones with Garren, and what she said is qualified and explained by the writing. The defendant company knew that this power of attorney, witnessed by Morris, was held by Belisle, and regarding that paper alone Mrs. Jones might have truly said in a general way to Garren that Belisle transacted all her business.

The written power is no authority for the transfer of the shares. It authorizes the agent to collect debts and demands due the principal; that is the limit of it, and its scope is not amplified by the words, " as well as to sign my name in all business transactions."

The right of the agent to sign the name of the principal must, upon a reasonable and fair interpretation of the whole

instrument, be restricted to such transactions as the agent is authorized, in the previous part of the power, to make on behalf of his principal.

The parol evidence in the case was therefore properly overruled and taken from the jury.

The instruction of the trial judge to the jury, that the written power of attorney did not authorize Belisle to divest his principal of her shares of stock, was likewise correct.

The question was properly left to the jury whether the signature of the plaintiff to the transfer was written by herself, or with her approval, for the purpose of divesting her title.

I find no error in the proceedings below in respect to any matter which has been submitted to this court, and am of opinion that the judgment should be affirmed.

DIXON, J. (dissenting). The question in issue at the trial of this cause was, whether an alleged transfer of stock in the defendant association, belonging to the plaintiff, was valid.

It appeared that one Belisle had attempted to execute such a transfer as agent of the plaintiff, but the defendant refused to recognize his authority unless he filed with the association his power of attorney. This he would not do, as he claimed it was a general power of attorney. Afterwards, in June, 1884, he produced the certificate of stock, with a transfer endorsed thereon, purporting to be signed by the plaintiff herself in presence of Belisle, and the defendant, believing the signature to be genuine, recognized the transfer and issued a new certificate to the transferee.

The plaintiff insisting that the signature thus endorsed was forged by Belisle, the defendant endeavored to prove that Belisle had general authority from the plaintiff to execute such instruments as this transfer on her behalf, so that, even though the signature was not written by her own hand, it was binding upon her. The evidence introduced by the defendant to this end was, at the close of the case, overruled by the trial judge, upon the ground that, as the defendant had relied, in the transaction, upon an instrument purporting and believed to be

signed by the principal herself, it could not now stand upon the proposition that the instrument was executed under a general agency ; and the sole question submitted to the jury was, whether the disputed signature had been made by the plaintiff herself or at her special request, for the particular purpose of transferring the stock. To this defendant excepted.

It is clear that the doctrine thus enunciated is unsound. If Belisle had authority from the plaintiff broad enough to cover the transfer of her stock, and in execution of it signed her name to an instrument in terms transferring it, there is no legal principle according to which his deceit, as to the hand that wrote the signature, could destroy the validity of the transfer. It seems to have been supposed at the trial that the defendant was estopped by the belief on which it acted in the negotiation, but, since the conduct of the person representing the plaintiff in the transaction was precisely the same in its effect upon her as it would have been if the defendant had believed what it now asserts, that the signature was made under the authority of the plaintiff, the essentials of an estoppel are wanting.

The question therefore arises, whether the evidence over-ruled was such as would warrant a finding that Belisle had authority to execute the transfer.

The testimony, in substance, was, that Belisle had for about twenty years lived with the plaintiff, who was illiterate ; that he held her written power of attorney, given in July, 1878, the concluding clause of which was, " with full power of substitution  *  *  *  as well as to sign my name in all business transactions ; " that thereafter he had collected her rents, the price of her real estate sold, her stock dividends and other moneys, had deposited her money in bank and had drawn and signed checks against it, and had signed her receipts, her contracts for the erection of buildings, and a deed of her land ; that she had declared herself responsible for any contracts made by Belisle, as he was her manager, that he could do all her business, and his power of attorney was all right ; that he also had possession of all her papers, including

her stock certificates; and that, for over two years after dis-covering that he had transferred her stock in the defendant association, she refrained from suing to recover it, and brought her suit after Belisle's death.

These circumstances, I think, would warrant an inference that the transfer of stock was within the scope of Belisle's authority, and therefore they should have been submitted to the jury.  Because the testimony to establish them was over-ruled, the judgment should be reversed.

Justices Depue, Reed and Magie and Judge Smith concur in this opinion.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, BROWN, WHITAKER.   5.

*For reversal*—DEPUE, DIXON, MAGIE, REED, SMITH.   5.